## Transportation of Migrant Workers

FREDERICK G. ANTOUN, Deputy Attorney General, and THOMAS D. MCBRIDE, Attorney General, September 17, 1957.—You have requested an opinion whether the Department of Labor and Industry has authority to issue regulations governing the transportation of migrant workers in commercial vehicles on the highways of the Commonwealth of Pennsylvania.

If the power and duty to promulgate regulations governing such transportation are given to the Department of Labor and Industry, they must be found in section 9 and section 12 of the Act of May 18, 1937,

P. L. 654, 43 PS §25-9 and §25-12, which read as follows:

"All canneries for the canning or preserving of fruits, vegetables and meats shall be kept in a clean and sanitary condition, and all labor camps operated in connection with such canneries and all other labor camps shall be located, constructed, maintained and operated in all respects as to provide for the health, safety, and comfort of occupants of such camps.

"The Department of Labor and Industry shall have the power and its duty shall be to make, alter, amend, and repeal rules and regulations for carrying into effect all the provisions of this act, and applying such provisions to specific conditions."

Migrant labor camps are clearly included within the term "all other labor camps" in section 9. The term "operated in all respects", when reasonably interpreted, must be taken to cover all phases and activities conducted in the normal everyday operation of a labor camp. Since the purpose of operating a labor camp is to provide a labor force for neighboring farmers and others who require the services of such laborers, it is inherent in such operation that the laborers be transported from the camps to the fields to perform their duties. Section 9, therefore, includes the transportation of migrant workers; section 12 empowers the Department of Labor and Industry to regulate this activity.

In regulating the transportation of migratory workers in commercial vehicles, the Commonwealth cannot regulate the transportation beyond the boundaries of the Commonwealth. However, where workers are being transported from one labor camp to another within the Commonwealth or into or out of the Commonwealth where the destination within the Commonwealth or the point of departure from the Commonwealth is a

labor camp, regulation of such transportation, limited to that portion commencing and concluding within the Commonwealth, is a reasonable exercise of the regulatory authority of section 12. Such transportation, included within the meaning of the "operation in all respects" of a labor camp, arises pursuant to oral or written contracts. These contracts, executed within or without the Commonwealth, provide that the operator of a labor camp within the Commonwealth or his agent will furnish transportation to and from the site of the labor camp or camps from which the laborer agrees to perform services for a given period of time. It is contemplated in these contracts that transportation to the camp or camps will be furnished in order that the operator may have available the labor force essential to the operation of the labor camp.

It is, therefore, the opinion of this department and you are accordingly advised that transportation in commercial vehicles, not regulated by the Public Utility Commission, of migrant workers within the Commonwealth may be regulated to provide for the health, safety and comfort of the occupants of labor camps within the Commonwealth by the Department of Labor and Industry.